THE STATE v. ELMER HAMILTON, Appellant.—102 S. W. (2d) 642.

Division Two, March 11, 1937.

*Livengood & Weightman* and *Emmett Bartram* for appellant.

*Roy McKittrick,* Attorney General, and *Frank W. Hayes,* Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant was convicted in the Circuit Court of Nodaway County, Missouri, of being an accessory after the fact in a murder. The information also alleged a former conviction of a felony and a discharge from the punishment imposed. A jury found appellant guilty of the charge and also found that he had been previously convicted, and assessed the maximum punishment of five years' imprisonment in the penitentiary. From this sentence an appeal was duly perfected.

Appellant lived with his three small children in Nodaway County, south of Maryville, near U. S. Highway 71. In the early part of May, 1934, Frank "Swede" Benson, Lawrence Hays and Janis Bockelman came to appellant's home and remained there, except for a trip to Colorado, until the 22d day of May, the day of the homicide. The house had two rooms, but the partition dividing them was not finished. The three children slept in one bed and Hays and Janis Bockelman occupied another bed in the same room. Appellant and Benson slept in a "bunk" house a short distance away. The evidence disclosed that Hays and Janis Bockelman were living together though not married. Mrs. Bockelman had been married but was separated from her husband. The evidence disclosed the whereabouts of Benson, Hays and Bockelman for several weeks prior to the time they arrived at appellant's home, but the details of their whereabouts will not be discussed because not material to the issues presented on this appeal, except we may say that Nodaway County was not their home.

On the evening of May 21, Benson and Hays left appellant's home. The purpose of their business was not disclosed by the record. They returned about 4:00 o'clock the following morning. Benson had been shot in the neck. Appellant was called from the "bunk" house and aided in dressing Benson's wound. It was suggested that a doctor had better be called. Hays and Bockelman drove to Hopkins, in the northern part of the county, for a doctor, but soon returned without being able to get one. Appellant thereupon took Benson to Maryville to be treated. When they arrived at the doctor's home appellant in-

formed the doctor that he had a friend who was suffering with a carbuncle and wished to be treated. Instead of a carbuncle the doctor discovered a gunshot wound, which he treated. Appellant and Benson then returned to the home of appellant. Benson went to bed in the "bunk" house and appellant began to do the chores about the place. It was then about six-thirty A. M. While appellant was doing his chores he heard a shot, then a scream, and he ran to the house. When he arrived he found that Benson had shot Hays while Hays was in bed sleeping. The bullet passed through his head resulting in instant death. Benson also threatened Bockelman, but she ran and got in bed with the three children. After some threatening by Benson, towards Bockelman, appellant and Benson drove away in a car. They drove to Hopkins, which is located a few miles south of the Iowa state line, where Benson got out of the car at a filling station and appellant drove back to Maryville. When appellant arrived at Maryville he stopped at an undertaking establishment and informed the man in charge that there was a dead man at his house whom he wanted them to get. He also requested the undertaker to call the sheriff and coroner. The sheriff and coroner soon arrived and questioned appellant as to what had happened. He gave them but little information, telling the officers he did not know the parties but there was a woman at the house who would tell them all about it. When the officers arrived at the home of appellant Mrs. Bockelman could not be found. It later developed that she had left immediately after appellant and Benson departed and was later found at the home of her mother in St. Joseph, Missouri. When appellant was asked as to the identity of the deceased and as to where Benson was, he denied that he knew them and misinformed the officers as to where he had taken Benson, but did inform them that he had been forced, by the killer, to take him to Maryville where he, the killer, got out of the car at the water tower. Other facts will be stated as we dispose of various points briefed by appellant.

Appellant's first point briefed is, that the evidence failed to sustain the charge. Appellant contends that the State was required to prove: First, that a felony had been committed; second, that the accessory had knowledge that the principal committed the felony; third, that the accessory, having such knowledge, assisted the principal in making his escape or in concealing the crime. As to the first and second points, both the State and appellant introduced evidence establishing those facts. The defendant testified fully with reference to the homicide. He said that when he arrived at the house he saw Hays in bed, and Mrs. Bockelman informed him that Benson had killed Hays; that Benson said to him: "I killed the dirty rat, s—of a b—. Come on and get me out of here or I'll kill you too." Appellant also testified that Benson still had a gun in his hands and threatened to kill Mrs. Bockelman, but that he, appellant, persuaded him not to do so because of the children; that Benson informed him, appellant, that

Hays was the person who had shot him in the neck, that it was not an accident, and that he had not accidently shot Hays. For the State Mrs. Bockelman testified to facts showing that Benson was guilty of murder and that appellant knew of it. There was, therefore, an abundance of evidence establishing that a felony had been committed by Benson, and that appellant knew it. These facts were conceded at the trial. The third point, whether appellant voluntarily assisted Benson in making his escape, was the disputed issue at the trial. If appellant's version was correct, then Benson forced appellant, at the point of a gun, to take him to Hopkins and, therefore, appellant could not be guilty of the crime charged against him. Appellant testified in detail how Benson forced him to drive him away; that he feared Benson; that he knew him as a killer and a bad man; that Benson had been drinking and acted as if he were crazy. Appellant further testified that after he returned from Hopkins he misled the officers as to the whereabouts of Benson and kept Benson's name a secret because he was afraid that if he informed them correctly Benson would return and kill him; that Benson had threatened to do this. On the other hand, Mrs. Bockelman testified for the State that Benson did not threaten appellant; that the two were on friendly terms and she did not see Benson point a gun at appellant. The State also offered evidence tending to impeach appellant's evidence by showing that he had made statements inconsistent with his evidence at the trial, particularly concerning what was said between appellant and Benson when Benson was alleged to have threatened to kill Bockelman. It was shown that on a previous occasion appellant had stated in substance that Benson said: ''I killed the dirty rat. He didn't shoot me by mistake. I didn't accidently shoot him. I have a good notion to go back and kill her;'' that he replied: ''No, come on, don't kill her in bed with those babies;'' that Benson replied: ''I would not do a thing to harm the babies or you.'' Other impeaching evidence was offered tending to show that appellant had made statements that Benson had not been drinking. At the trial appellant testified that Benson was crazy with pain and drink. Appellant's cross-examination also disclosed a reluctancy to answer questions concerning former statements he was alleged to have made. The State introduced evidence, and appellant admitted that he misinformed the officers with reference to the identity of the deceased and Benson, and other material facts concerning the homicide and the disappearance of Benson. It was further shown that after the police officers found Mrs. Bockelman and she correctly informed them of the identity of the parties and what had transpired, that then appellant admitted he had been untruthful, but said he was afraid to tell the truth because of Benson's threats. Mrs. Bockelman was not found until late in the afternoon, or about twelve hours or more after appellant first notified the undertaker that there was a dead man at his home. It was shown that

Benson successfully made his escape. The present charge was filed some months after the homicide. We are of the opinion that the State introduced substantial evidence from which the jury was justified in finding that appellant deliberately misinformed the officers for the purpose of aiding Benson in making his get-away, and also that appellant voluntarily drove Benson to Hopkins to aid in his escape. The point is ruled against appellant.

Appellant urges, that the trial court erred in admitting evidence concerning the whereabouts of Benson, Hays and Bockelman and evidence of their activities prior to the homicide; that the court erred in admitting evidence of the character and habits of Benson; also that the trial court erroneously permitted the State to introduce photographs of the dead body of Hays lying in bed where he had been shot.

It must be remembered that it was incumbent upon the State to prove that Benson murdered Hays. Therefore, for a proper understanding of the situation it was necessary to show the surrounding circumstances and what had transpired prior to the homicide; also what Benson said to Mrs. Bockelman at the time of the shooting. The evidence was competent and material on the question of whether the killing was justifiable or felonious. Evidence of what transpired between the parties during the time they lived in appellant's home was competent and material for the purpose of showing that appellant was well acquainted with the parties connected with the homicide, and to disprove appellant's statements made to the officers on the morning of the homicide. Appellant is in no position to complain of evidence concerning the character and habits of Benson, for the reason that appellant asserted at the trial that Benson was a bad man and known as a killer. Appellant introduced evidence tending to show this fact. Appellant testified that he feared Benson because he knew, or thought Benson would carry out his threats. On cross-examination of a State's witness, a police officer, appellant, over the objection of the State, brought out the fact that Benson was known to the police officers as an outlaw. In this state of the record appellant is in no position to complain of similar evidence introduced by the State.

On the question of the introduction of the photographs we must keep in mind that the State had only one eyewitness to the homicide. This witness was friendly to the deceased and also somewhat discredited. It was, therefore, important for the State to introduce all the available evidence it possessed, which tended to corroborate the evidence of this witness. The photograph was also evidence of the identity of the deceased. Appellant, later in the trial, admitted the identity of the deceased and also admitted that Benson committed the homicide. No such admissions were made at the time the exhibits were offered in evidence. Since the photographs were evidence of a fact which the State was required to prove, it was not error to admit them

in evidence. [State v. Shawley, 334 Mo. 352, 67 S. W. (2d) 74, l. c. 82, 83 (12-17), and cases cited.] In State v. Clough, 327 Mo. 700, 38 S. W. (2d) 36, l. c. 39, we ruled that the clothing of the deceased in that case should have been excluded because it was of no value as evidence of any fact in the case. The same is true of the ruling in the case of State v. Pearson, 270 S. W. 347.

Appellant also asserts that the prosecuting attorney was permitted, over appellant's objection, to exhibit the photographs to the jury during his closing argument. The record discloses that this occurred only once, when the prosecuting attorney was making the argument that appellant, knowing that a gruesome murder had been committed, as the photograph disclosed, should have reported such fact in place of deliberately misleading the officers. We do not deem the argument of such inflammatory nature as to justify the reversal of the case.

It is contended that the trial court erroneously permitted the defendant to be cross-examined on matters not covered by the direct examination. The record discloses that appellant, on direct examination, explained in detail all of his connections with Benson, Hays and Bockelman and gave his version of what occurred on the day of the homicide. Having thus testified in detail on direct examination, appellant was subject to be cross-examined upon any phase of the case. Appellant did not point out in his motion for new trial to what portion of the cross-examination he objected. In reading the record we were unable to discover that the prosecutor went beyond the scope of the direct examination.

Appellant's nineteenth assignment of error in the motion for new trial reads as follows:

"NINETEENTH: The court erred in failing to reprimand the Prosecuting Attorney and to discharge the jury upon the request of the defendant when, in his examination of witnesses, the Prosecutor, in the presence of the jury, injected personal comment into the testimony of the witnesses by making remarks and exclamations after the witnesses' answers."

Appellant repeated this assignment in his brief and cited nine cases in support thereof. Appellant has not pointed out what ruling of the trial court, if any, he complains of, and therefore this assignment is not sufficient to present anything for our review.

While witness Bob Garten was on the witness stand, the prosecuting attorney, during his cross-examination, asked if he did not have a criminal charge pending against him. Appellant objected and asked that the jury be discharged. The trial court sustained the objection and instructed the jury to disregard the question. The motion to declare a mistrial was overruled. The question was improper and the trial court correctly ruled on the objection. Declaring a mistrial for asking improper questions of this nature is largely a question for the trial court. [State v. Bersch, 276 Mo. 397, 207 S. W. 809, l. c.

817 (25).] In this case it seems to us that the discretion was wisely exercised. The question was not answered and the court immediately informed the jury that it was improper. This was sufficient. [State v. Sinovich, 329 Mo. 909, 46 S. W. (2d) 877, l. c. 880 (12, 13).]

■ Error was also assigned to the ruling of the trial court in permitting the prosecuting attorney to cross-examine appellant's witnesses, Garten and Myers, and to ask them questions without first advising them of their right to refuse to answer on the ground that the answer might incriminate them. The right of cross-examination is so firmly embodied in the law that we need not discuss that question. Appellant was not in a position to invoke the privilege on behalf of the witnesses to refuse to answer questions because the answers might be self-incriminating. This question was fully answered in State v. Shepard, 334 Mo. 423, 67 S. W. (2d) 91, l. c. 95 (8), where this court said:

"Since Hillyard was not joined with the defendant in the same information or indictment, he was a competent witness. [State v. Parker, 324 Mo. 734, 741, 24 S. W. (2d) 1023, 1926; State v. Cardwell, 332 Mo. 790, 60 S. W. (2d) 28, 32.] His claim of privilege on the ground that his testimony might tend to incriminate him was strictly personal to him—a matter between him and the State. The claim could not be interposed for him by the defendant; nor can the defendant object even though the court failed to accord the witness due constitutional immunity. [40 Cyc., p. 2547 et seq.; State v. Kennedy, 154 Mo. 268, 285, 55 S. W. 293, 298.] If, therefore the evidence sought to be elicited was competent as against the defendant, the defendant has no ground for complaint unless the manner in which the examination was conducted violated his rights."

In the case at bar both witnesses took refuge in the privilege when they were hard pressed in their cross-examination and after appellant's counsel advised them that they could take advantage of that privilege. Garten owned the filling station at Hopkins where Benson, on the morning of his flight, left appellant. Appellant testified that he heard Benson request Garten to take him north, and heard him say that he had killed Hays and wanted to get away. At the trial Garten was a willing witness for the defendant and it was shown that he knew Benson quite well. On cross-examination he took refuge by exercising his right to refuse to answer questions on the ground of self-incrimination, and therefore the record is silent as to what transpired between Benson and this witness.

■ Appellant complained of Instruction No. 1, the main instruction in the case. The first criticism made in appellant's brief is that the instruction ignored the defense that appellant was compelled through fear to assist Benson in making his escape. We deem this criticism without merit. The instruction required the jury to find beyond a reasonable doubt, before authorizing a conviction, that ap-

pellant "did then and there willfully, unlawfully and feloniously receive, conceal, harbor, aid, assist and maintain the said Frank Benson with the unlawful and felonious intent and in order that Frank Benson might make his escape and avoid arrest. . . ." If the jury so found, then they must have of necessity found that appellant was not forced against his will to aid in the escape. In addition the trial court gave, at appellant's request, an instruction fully covering his defense, that if he was compelled to act as he did through fear then he was not guilty and the jury should acquit him.

The next point made is that the instruction placed undue emphasis on the prior conviction of appellant. Under our rulings the trial court was required to instruct the jury specifically on the question of the previous conviction mentioned in the information. To invoke the so-called Habitual Criminal Statute the State must definitely allege and prove that the defendant had been previously convicted and that he had been discharged from the sentence imposed before the commission of the alleged crime charged in the information. [State v. Christup, 337 Mo. 776, 85 S. W. (2d) 1024.] The instruction of the court must likewise be definite and certain on that question. In this case the trial court followed the ruling made in the cases of State v. McBroom, 238 Mo. 495, l. c. 501, 141 S. W. 1120; State v. Cardwell, 332 Mo. 790, 60 S. W. (2d) 28; State v. Krebs, 336 Mo. 576, 80 S. W. (2d) 196. The instruction in this case was entirely proper.

Another assignment, as briefed by appellant, reads as follows: "The court erred in compelling defendant to proceed to trial after it was affirmatively shown that the Sheriff had selected prospective jurors who were known to him to be convictors, and had made no attempt to get alternate jurors from the regular panel. Under the Constitution, defendant was entitled to a trial by a fair and impartial jury."

In the motion for new trial appellant complained because two jurors, Grant McMillen and William Trullinger, were retained on the panel. These jurors had been selected by the sheriff. In the motion for new trial it was alleged that juror McMillen was a convictor and known to be such by the sheriff. The only basis for this contention, as disclosed by the record, is the fact that at one time the juror had been a deputy sheriff and had in such capacity aided in the apprehension and conviction of criminals. Juror Trullinger had been, but was not at the time of the trial, or when the offense was committed, a police officer in the city of Maryville and had also been an attendant at State Hospital No. 2, at St. Joseph, Missouri. It was asserted that, therefore, the juror was a convictor. The *voir dire* examination did not disclose any tendency on the part of either juror to be prejudiced against persons charged with crime. Neither knew of any fact in the case that would disqualify him as a juror.

We cannot say, as a matter of law, that ex-officers are naturally disposed to convict, and therefore are disqualified as jurors. This would be necessary to sustain appellant's contention. We rule that the trial court correctly refused to sustain appellant's contention on this ground.

■ The other objection to the jurors, that they were neither on the regular panel or alternates, must likewise be ruled against appellant. The record disclosed that the sheriff received an order from the trial court to summons a number of extra jurors. The sheriff testified as follows:

"A. I got what alternates was handy when I got this order; I didn't have time to go all over the county.

"Q. When did you get the order? A. Yesterday, along in the middle of the day. I probably could have got them by driving all night. I never knew I was supposed to get the alternates:. I was just ordered to fill this jury and get some extras."

A trial court has authority to order the sheriff to select extra jurors for any particular case whenever deemed necessary. A defendant cannot complain of this unless he shows prejudice. [Sec. 8760, R. S. 1929 (Mo. Stat. Ann., p. 4700); State v. Pine, 332 Mo. 314, 57 S. W. (2d) 1087, l. c. 1089 (1-3); State v. Boone, 289 S. W. 575, l. c. 578 (6).] In the latter case this court said:

"There is no merit in the contention that nine extra jurors were not properly summoned. Extra jurors called to complete the panel for any given case are not required to be drawn from the alternates provided for by Section 6617, Revised Statutes 1919. [See State v. Murphy, 292 Mo. 275, l. c. 287, 237 S. W. 529.] It appears that the court ordered the sheriff to get nine extra jurors. He summoned two of them from the bystanders and others from persons easily available, and called two of the extra jurymen by telephone. This procedure is fully authorized by said Section 6617."

■ Appellant also urges that the trial court abused its discretion in refusing to exclude the sheriff and the official court reporter, Verna Kennedy, from the courtroom. During the trial they were witnesses in the case, and appellant requested that all witnesses be excluded from the hearing. Miss Kennedy's presence was required because of her official duties, and so far as the record shows she was entirely disinterested. The record also failed to disclose any special interest on the part of the sheriff. It was shown that he made an effort to apprehend Benson and aided in obtaining evidence. It was not shown that the sheriff did anything more than he was bound to do as an official. His evidence did not disclose any prejudice against appellant. The trial court did not abuse its discretion in denying the request of appellant as to these two witnesses. [State v. Tummons, 34 S. W. (2d) 122, l. c. 123, 124 (3, 4).] We have dis-

posed of all points briefed by appellant. The record has been carefully examined and we find no error therein.

The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.