**UNITED STATES v. MARZANO.**

No. 323.

Circuit Court of Appeals, Second Circuit.

June 4, 1945.

David V. Cahill, of New York City, and Louis J. Castellano, of Brooklyn, for appellant.

Clayton D. Hollinger and John F. X. McGohey, U. S. Atty. for Southern District of New York, both of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

 Marzano, the appellant, was convicted of selling morphine, and, under a separate indictment, of conspiring with two others—Tessalone and Sperduto—to do the same thing. Tessalone and Sperduto pleaded guilty, and the two indictments were consolidated upon the trial. Marzano raises several points upon this appeal, all but one of which are without merit, and which we may dispose of summarily at the outset. It was so plainly proper to consolidate the indictments that the objection is somewhat surprising. The substantive charge was a sale on November 11, 1939, in support of which a decoy, named Collins, swore that he bought morphine of Marzano in Marzano's apartment on that day. Leading up to this sale was an earlier appointment at the same place on November 3d, where Collins met not only Marzano but Sperduto, and where enough took place to show that the two were acting in concert. Thus, the evidence of the sale would have been admissible under the indictment for conspiracy; and the evidence of Sperduto's connection with Marzano would have been admissible under the indictment for sale. United States v. Brandenburgh, 2 Cir., 146 F.2d 878. As soon as a conspiracy between these two was shown, the addition of Tessalone became relevant. The next objection is that the only evidence of conspiracy was hearsay. This is not true. From the interview of Collins with Marzano and Sperduto on November 3d the judge was justified in finding that there was such a concert between them as made competent against Marzano all that Sperduto said which was relevant to the mutual enterprise so disclosed. Collins did not, it is true, deal with Tessalone; but another decoy, Leiberman, did, and with Sperduto also. Leiberman's testimony as to Sperduto's declarations was competent against Marzano, just as the declarations were which Collins put into Sperduto's mouth; and when Leiberman swore that Sperduto and Tessalone dealt with him jointly in his purchases, Sperduto's declarations were as competent to prove Tessalone's connection with the conspiracy as to prove anything else. They were hearsay, it is true, but the judge might find them to have been made in the execution of the venture; and that was enough. Finally, if the jury believed Collins and Leiberman, their testimony supported a verdict on both charges. Thus, the appeal would present no serious question, were it not for occurrences which we shall now describe.

The trial had taken two full days, and the evidence was concluded early on the morning of the third, except for the absence of an unimportant witness for the defense who was late. Sperduto and Tessalone were in court, but Marzano had not wished to call them; nor had the prosecution in spite of their pleas of guilty, and of the fact that Tessalone at least had apparently made disclosures to a "Narcotic Agent" of the Department of Justice. The judge announced that "in the interest of justice" he would call both as witnesses, and he thereupon administered the oath personally to Tessalone, whom he then examined as appears in the margin.[1] The

---

[1] "The Court: Listen to the oath very carefully. I am going to give it to you.

"The Witness: Your Honor, I refuse—

"The Court: No. Do you solemnly swear that the testimony you shall give in this case shall be the truth, the whole truth and nothing but the truth, so help you God?

"The Witness: I swear.

"Q. What is your full name? A. Vincent Tessalone.

"Q. You pleaded guilty here to both indictments? A. That is why I refuse to answer.

"Q. You have pleaded guilty and are awaiting sentence by me, aren't you? A. Yes, sir.

"Q. Do you know the defendant Alfonso Marzano? A. I do.

"Q. How long do you know him? A. All my life.

"Q. Are you related to him? A. No, sir.

"Q. What do you mean by 'all your life'? How old are you? A. Since I was a kid.

"Q. How old are you? A. 45.

"Q. Did you have any conversation with this defendant about narcotics? A. I refuse to answer, your Honor.

prosecution then cross-examined him, seeking to extract an admission that after his arrest he had told Greenfeld, the "Narcotic Agent," that he, Tessalone, "had gone to Alfonso Marzano and told him" that he "had a customer for narcotic drugs." This Tessalone denied; though, when he was asked whether he had told Greenfeld that Marzano had told him "to go to" Sperduto, and that Marzano had also recommended that he take Leiberman to Sperduto, he professed not to remember. (The prosecution later called Greenfeld, and asked him whether Tessalone had said that Marzano told him, Tessalone, to take Leiberman to Sperduto, but the judge would not allow the question.) After Tessalone the judge called Sperduto, personally administered the oath to him also, and examined him as appears in the margin.[2]

It is permissible, though it is seldom very desirable, for a judge to call and examine a witness whom the parties do not wish to call. United States v. Breen, 2 Cir., 96 F.2d 782, 784; United States v. Gross, 7 Cir., 103 F.2d 11, 13. A judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty which he cannot discharge by remaining inert. Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321; Montrose Contracting Co. v. Westchester County, 2 Cir., 94 F.2d 580, 583. In the case at bar the judge was so far therefore within his powers; but in the manner in which he used them we think

"Q. Why? A. I am already under sentence.

"The Court: I direct you to answer.

"A. I never did.

"Q. What? A. I do not get that.

"Q. Did you ever have any talks with the defendant Marzano about narcotics? A. I do not remember.

"Q. You do not remember? A. I do not know nothing about him.

"Q. What is it you remember? A. I never did talk to him.

"Q. Never talked to him? A. No.

"Q. Did you ever discuss narcotics with him? A. I never did.

"Q. Drugs? A. No, sir.

"Q. Are you telling the truth? A. I am.

"Q. You know I am going to sentence you, don't you? A. Yes.

"Q. I ask you again, did you have any talk with him about any narcotics? Tell me the truth. A. No, sir."

[2] "The Court: Do you solemnly swear that the testimony you shall give in this case shall be the truth—

"The Witness: Your Honor—

"The Court: Stop—the whole truth and nothing but the truth, so help you God?

"The Witness: Yes.

"Q. What is your full name? A. William Sperduto.

"Q. You are a defendant in this case? A. Yes, sir.

"Q. You pleaded guilty to two indictments? A. Yes, sir.

"Q. Do you know the defendant Marzano? A. Yes, sir, we are neighbors.

"Q. How long have you known him? A. For about fifteen years.

"Q. Did you have any talk with him about drugs or narcotics? A. No, sir.

"The Court: All right, you may cross-examine.

"By Mr. Hollinger: Q. When was the last time you talked to Marzano? A. I talked to him every other day or so.

"Q. Did you see him in West Street, there in the detention headquarters? A. Yes, sir.

"Q. Did you see him last night? A. Yes.

"Q. Did you see him this morning? A. Yes.

"Q. Did you talk to him about drugs? A. No, sir.

"Q. Did you talk to him about this case? A. No.

"Q. What did you talk about? A. The usual things; 'How did you make out.' That is all.

"Q. That is all you talked about? A. That is all.

"Mr. Hollinger: That is all.

"Mr. Solomon: That is all.

"The Court: Just a moment. Just come back a minute.

"By the Court: Q. You are awaiting sentence? Do you know you are awaiting sentence by me? You know I am going to sentence you? A. Yes, sir.

"Q. You know that? A. Yes, sir.

"Q. Anything you want to change about your testimony, anything here—

"Mr. Solomon: I object.

"The Court: Overruled.

"Mr. Solomon: I want to get this on the record. I object as to your Honor stating to this witness in words or substance, 'You know I am going to sentence you,' because in my opinion—

"The Court: I do not care anything about your opinion. Do not express it.

"Mr. Solomon: I object to it on the ground that it tends to influence this man in giving testimony, because it may be under threat. That is my humble opinion.

"Q. Have you told the truth here? A. Yes, sir. I do not know anything else about the man."

that he exceeded them. It is impossible to resist the conclusion from the examination just quoted, that, not only did he disbelieve Tessalone and Sperduto, when they denied any complicity with Marzano, but that he meant them to understand that if they persisted in their denials, he was likely to increase the sentence he would otherwise impose. Had they yielded to this threat—for such it was—by implicating Marzano, the verdict certainly could not have stood. It is true that a person who has pleaded guilty and has not yet been sentenced may testify; it is also true that such a witness always hopes that by testifying he will lessen his punishment; but he is not told that his testimony must be satisfactory to the court to secure any favor; and it would be altogether intolerable, if he were. We cannot see this incident in any other light than that these witnesses were told just that.

The prosecution replies that no harm was done, because the witnesses stood their ground and would not retract. We do not agree. It is true that Collins had already connected Sperduto with Marzano, and that Leiberman had connected both him and Tessalone with Marzano. Had the judge during his charge said to the jury that he believed these witnesses rather than Tessalone and Sperduto, it would have been unobjectionable. But he did not confine himself to that, for it must have appeared to the jury extremely probable that, not only was he satisfied that they were accomplices, but that he was relying upon more than the testimony of the decoys; that he had other grounds for his belief which had not come out upon the trial; for he would scarcely have gone the lengths which he did, merely upon such testimony. Moreover, that he had other grounds did in substance appear when the prosecution asked Greenfeld whether Tessalone had made a contrary statement as to his relations with Marzano. The exclusion of the answer did not better the situation. Incidentally it was wrong as matter of law, for any party may impeach a witness called by the judge (Litsinger v. United States, 7 Cir., 44 F.2d 45; Young v. United States, 5 Cir., 107 F.2d 490; Wigmore, § 918); and in effect it emphasized the original mistake by preventing the disclosure and the testing of the actual grounds on which the judge had been acting.

The whole incident had a much more serious character than it otherwise would have, because of earlier testimony of Collins. He had sworn that at his interview with Marzano and Sperduto on November 3, they had ostentatiously displayed a revolver in order to let him understand what would happen to him if he should expose them. It would be very natural for the jury to read in the resistence of Tessalone and Sperduto to the judge's threats a fear of the danger they would expose themselves to, if they yielded. The total impression upon the jury may well have been that, although Tessalone and Sperduto had in fact implicated Marzano, they stood in such dread of possible reprisals that they were willing to incur the judge's displeasure, and to endure its consequences, rather than do so at the trial, where alone it counted. The situation appears to us to be one in which, as in Quercia v. United States, supra, 289 U.S. 466, 471, 53 S.Ct. 698, 700, 77 L.Ed. 1321, the judge "did not analyze the evidence; he added to it"; and while it may be true that he did not base any "instruction upon his own addition," the effect was the same as though he had. Moreover, even if the jury were not as likely as seems to us to be the case, to have so understood what took place, the judge was exhibiting a prosecutor's zeal, inconsistent with that detachment and aloofness which courts have again and again demanded, particularly in criminal trials. Despite every allowance he must not take on the role of a partisan; he must not enter the lists; he must not by his ardor induce the jury to join in a hue and cry against the accused. Prosecution and judgment are two quite separate functions in the administration of justice; they must not merge. Adler v. United States, 5 Cir., 182 F. 464, 472–474; Connley v. United States, 9 Cir., 46 F.2d 53, 55–56; Frantz v. United States, 6 Cir., 62 F.2d 737, 739; Williams v. United States, 9 Cir., 93 F.2d 685, 690, 691; United States v. Minuse, 2 Cir., 114 F.2d 36, 39.

Judgment reversed; new trial ordered.