**STATE of Missouri, Respondent,**

v.

**Martin Van Buren NEAL, Appellant.**

**No. 57274.**

Supreme Court of Missouri,
En Banc.

Feb. 23, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Zane White, Pros. Atty., Rolla, for respondent.

Jay White, Rolla, for appellant.

HOLMAN, Judge.

Defendant was convicted of operating a motor vehicle while in an intoxicated condition. See § 564.440.[1] The jury fixed his punishment at a fine of $250. He appealed to the Springfield Court of Appeals (since January 1, 1972, Missouri Court of Appeals, Springfield District). That court, with one judge dissenting, reversed and remanded because of error in the admission of evidence holding that the *Miranda* rule is applicable to this misdemeanor offense. The court, however, recognizing that a question of general interest and importance is involved, transferred the case to this court for determination pursuant to Art. V, § 10, Mo.Const., V.A.M.S. It will be determined here "the same as on original appeal." Civil Rule 83.09, V.A.M.S.

We adopt a portion of the appeals court opinion of Judge Hogan, as follows:

"On August 22, 1969, during the evening hours, the Missouri State Highway Patrol was called to investigate an accident at the west overpass of Interstate Route 44 and 'City Route' in Rolla, Missouri. In the middle of the road, at the west end of the interchange, there is a concrete island between the lanes which lead to the north access road, and there is, or was, a signpost in the middle of the island, which is raised about six inches above grade. The investigating officer, Trooper Walter Aytes, found that the signpost was bent to the west, indicating it had been struck by a westbound vehicle which had jumped the curb and traveled across the island.

"Trooper Aytes found a 'trail of water and antifreeze, stuff of this type, on the highway leading away from the signpost, or the island, in a westerly direction along the access highway.' He followed this watery trail approximately two to two and one half miles and then turned north, where the trail of liquid 'ran out' on a gravel road. The trooper continued down the gravel road, and about a mile from where the trail of liquid ended he found the defendant, in an automobile, sitting in the middle of the road 'with the lights on.' There, in circumstances presently to be stated in detail, the trooper arrested the defendant, and this prosecution followed.

"One of the points raised by the defendant is that the trial court abused its discretion in refusing to segregate the witnesses. At the outset of the trial, the defendant moved for exclusion of the witnesses on the ground that ' * * * we feel like it would be prejudicial to the defendant for the witnesses to just sit here and hear each other testify and conform to each other's testimony, so that they should be able to testify independently from what their own independent recollection as to what occurred, and for that reason we feel that to arbitrarily refuse * * * the rule on the witnesses would be prejudicial to this defendant * * *.' * * * The court refused to segregate the witnesses, and the defendant now complains that it abused its discretion in doing so, citing State v. Lord, Mo., 286 S.W.2d 737. In that case the court held, among other things, that the exclusion of witnesses from the courtroom during the progress of the trial was a mat-

1. Statutory references are to RSMo, 1969, V.A.M.S.

ter addressed to the sound discretion of the court, and that a witness cannot, by disregarding the court's order, deprive a party of his testimony, in the absence of laches or connivance of the party entitled to the offending witness' testimony. In the Lord case, a witness arrived late and entered the courtroom momentarily to indicate his presence in the courthouse. It was held that there was no abuse of discretion in permitting the witness to testify.

■ "We cannot see that the Lord case is similar to the case at hand, or that the opinion of the court aids the defendant in any way. Here, the only two witnesses who testified were officers of the law. There is nothing in the record to indicate that either of them had any special interest in the case, or that either did anything more than he believed he was bound to do as a peace officer. There is nothing to indicate that either witness was prejudiced against the defendant. In these circumstances, we find no abuse of discretion in the trial court's refusal to segregate the witnesses during the progress of the trial. Huffman v. State, Mo., 451 S.W.2d 21, 23 [1, 2]; State v. Hamilton, 340 Mo. 768, 778 [14], 102 S.W.2d 642, 648 [20]; State v. Tummons, Mo., 34 S.W.2d 122, 123, 124 [3, 4].

"The defendant has briefed three other points concerning the conduct of the trial which may be discussed and considered together. They are: That the court improperly 'advised' the prosecuting attorney how to ask certain questions; that the trial court exhibited hostility toward defendant's counsel during the course of the trial, and that the court engaged in unwarranted controversy with counsel in the presence of the jury. The defendant has referred to approximately half a dozen episodes which occurred shortly before and during the trial, and concludes that the trial court demonstrated 'partiality to the State's side of the case.'

■ "The first of the episodes of which the defendant complains occurred before the trial began. It appears that counsel for the defendant had four cases set for trial on the day this case was tried. One of counsel's clients did not appear, and according to defendant's counsel, he was subjected to a vituperative rebuke by the court in connection with an application for continuance made on behalf of that client. According to defendant's counsel, the unjustified reprimand occurred within the hearing of the jury. Counsel has filed a number of supplemental papers here for our consideration, but they are not in proper form, because the supplemental material has not been settled as required by Rule 28.08, V.A.M.R. It is apparent from counsel's argument and his demeanor in this court that he considered the trial court's remarks offensive and the court's ruling unjust, but what the trial court said, if anything, and what prompted him to say it, is not shown. Counsel has it that the trial court threatened to report him to the Circuit Bar Committee (for what, we are not advised), and in papers laid before us here counsel stated that he was 'going to file a motion as soon as the Clerk gets here.' We note that no motion for disqualification was filed or orally requested, but it is pointless to pursue the complaint in detail. Allegations of error of this sort do not prove themselves, State v. Barnholtz, Mo., 287 S.W.2d 808, 812 [4]; State v. McKeever, 339 Mo. 1066, 1082, 101 S.W.2d 22, 30, and in the absence of a record showing what the trial judge said, and what provoked what he said, there is nothing before us for review. Our review is limited to the proceedings shown by a properly authenticated transcript. State v. Overby, Mo., 432 S.W.2d 277, 279 [6]; State v. Caffey, Mo., 365 S.W.2d 607, 609 [1]; State v. Deckard, Mo., 354 S.W.2d 886, 887 [1].

"Another incident of which the defendant complains occurred while Trooper Aytes was testifying. The witness was asked whether from his practical experience during eight years as a trooper he was able to form an opinion whether an individual person was too intoxicated to

operate a motor vehicle on the highway. The witness answered 'Yes,' and the questioning proceeded thus:

'Q. Now, what was your opinion, based on your experience and training, as to whether or not this defendant, Mr. Neal, was too intoxicated to drive a vehicle safely on the road?

'Mr. J. White: Well, now, I object to the question for several reasons, Your Honor, as follows: One is there was no probable cause. He didn't see him driving to arrest him for any driving while intoxicated. The question doesn't properly phrase it that he was—his opinion about whether or not he was driving while intoxicated. The question of the prosecutor is improper in that respect. And also, he hasn't properly qualified himself and given the basic factual background in his hypothetical question for this defendant (sic) to answer.

'The Court: Well, I think you should leave out the words "too intoxicated to drive on the highway with safety." The question is: Was he intoxicated? And frame a question that you want to develop some facts that you—

'Mr. Z. White: Yes, sir. I'll rephrase the question. * * *

'Mr. J. White: Well, at this time I request that the Court declare a mistrial and order the jury discharged for the reason that the Court has shown the position toward the prosecuting attorney, by assisting the prosecuting attorney to help phrase his questions and to—in order to make his questions admissible, so that this defendant can give an opinion here that this should not be admitted and should not be admissible.

'The Court: Overruled.

'Mr. J. White: The Court take that action, we respectfully request that as I have suggested.

'The Court: What was that now? I didn't understand the last part.

'Mr. J. White: Well, I'd requested the Court to declare a mistrial, Your Honor, because of the Court's actions.

'The Court: Overruled.'

"The prosecuting attorney was then permitted to ask the witness if it was his *opinion that on the occasion in question,* Mr. Neal was intoxicated. The witness' opinion was that Mr. Neal had been. The prosecutor then sought to ask Trooper Aytes if in his opinion the defendant was *intoxicated to the extent that he would be* a hazard on the road. Objection to this question was sustained; the witness was not permitted to answer.

 "The *defendant complains that* the trial court's action in directing the prosecuting attorney to refrain from asking whether defendant was 'too drunk to drive,' and his suggestion that some facts be developed as a basis for the witness' opinion indicated his prejudice against the defendant, and constituted an attempt to aid the State's case. We cannot agree. Certainly it was the trial court's duty to maintain an attitude of impartiality, but counsel had objected specifically, and the court was entitled to explain his ruling on the objection, so long as it did not prejudice the defendant. State v. Murphy, 341 Mo. 1229, 1235–1236, 111 S.W.2d 132, 135 [5], [6,7]; 23 C.J.S. Criminal Law § 992, pp. 1018–1019. All the trial court did here was to state, in response to counsel's objection, that the prosecutor should not ask a *question obviously invading the province of* the jury, and agree with counsel that a proper question should postulate the facts upon which the witness based his opinion. The trial court neither undertook to question the witness himself, nor to express any views of his own. The court was, after all, charged with the duty to see that the law was properly administered, and he could not discharge that duty by remaining wholly mute and inert. United States v. Marzano, 2 Cir., 149 F.2d 923, 925. It has, indeed, been held proper for a trial court to suggest a line of questioning when that

is necessary for the guidance of the jury, and the suggested line of questioning does not indicate prejudice toward the defendant. City of St. Louis v. Hellscher, 295 Mo. 293, 298 [4], 242 S.W. 652, 653 [4]; State v. Wilson, 152 Mo.App. 61, 68 [4], 132 S.W. 303, 305. We find nothing prejudicial to the defendant in the trial court's action regarding the 'hypothetical' question put to Trooper Aytes.

"There is no necessity for further and extended discussion of the other episodes which counsel says indicate prejudice against the defendant and his counsel and favorable bias toward the State's case. We have examined the record carefully, and it does not indicate any display of hostility toward counsel for the defendant. Certainly we find none of the vituperation and sarcasm which characterized the trial judge's conduct in State v. Hicks, Mo., 438 S.W.2d 215, upon which the defendant relies; we are convinced that the trial court acted at all times with a purpose to maintain orderly procedure and to expedite the hearing of the case without denying the defendant any right to which he was entitled under the law. See State v. Barnholtz, supra, 287 S.W.2d 808 at 812 [4]; State v. Fletcher, Mo., 190 S.W. 317, 323 [21].

"This brings us to the principal * * * point presented on this appeal. The defendant claims that the trial court erred in admitting inculpatory statements made by the defendant without having been warned of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The State answers this point, in part, and consistently maintained at the trial, that the *Miranda* decision is not applicable to misdemeanors, and of course, since this is a first conviction under § 564.440, the offense of which defendant was convicted is a misdemeanor. This particular point has been rather informally presented, but it was raised at the earliest practicable time (during the opening statement for the State), was kept alive during the trial, and has been briefed

and argued here. It is before us for decision.

"As noted, Trooper Aytes came upon the defendant's automobile some three and one half miles from the damaged signpost sitting 'in the middle of the road with the lights on.' The defendant was 'under the wheel' trying to get his car started. Trooper Aytes pulled up behind the defendant, and asked defendant if he was having car trouble. The defendant answered that his car had 'just quit running on him' and he did not know what was the matter with it. Trooper Aytes then got out of his car and went to the door of defendant's vehicle. The window was open. The trooper observed that defendant's vehicle was very hot, and that it had sustained extensive damage to the front end. There was a large 'V-shaped' indentation in the front end of the car, and 'you could see marks of approximately the same width as the "I" beam would have been on the signpost.' The witness was then asked: 'Q. And he also made a statement that he was driving, too, till it quit him?' Objection was made to this question and the objection was sustained. The prosecutor then asked: 'Q. Did he make a statement then as to who drove the car up there?' Counsel for defendant objected to any statement defendant made until a 'foundation is laid to the *Miranda* decision.' The prosecuting attorney pursued the matter, that is, whether defendant made a statement concerning any passengers or other persons who might have been in the car. Trooper Aytes testified that he didn't believe he had asked about anyone else being in the car, but that he noted that the defendant's eyes were very red, his speech was slurred and he seemed to be in a confused state, and that standing 'within a foot and a half' of the defendant, he could detect a strong odor of alcohol. The defendant got out of his car, and walked to the patrol car, 'very unsteady on his feet,' able to walk unaided, but staggering. The witness was then asked if the defendant 'was arrested at this time.' He replied, 'Yes, sir, he was arrested when I arrived at the scene.' The

witness was then permitted to give his opinion, as we have stated, that the defendant had been intoxicated at the time.

"On cross-examination counsel was at some pains to determine when the defendant had been 'arrested' in the sense that he was placed under restraint. According to his testimony on cross-examination, Trooper Aytes put the defendant under arrest after he got out of the patrol car, walked to the defendant's vehicle and observed the defendant and the damage to the defendant's vehicle. Trooper Aytes then advised the defendant that ' * * * any answers that he gave me could be used against him in a court of law'; he did not advise the defendant of his right to remain silent, and told him nothing concerning his right to counsel.

"The State also had the evidence of another officer, Trooper Herndon, who participated in the investigation. Trooper Herndon testified that when he arrived Trooper Aytes was already there, and that the defendant was standing outside his car, 'by the side of it.' The witness was asked if defendant said anything concerning driving the car. Over objection that no *Miranda* warning had been given, the witness was permitted to answer, 'If I recall, *Trooper Aytes asked Mr. Neal if he had been driving the vehicle and Mr. Neal stated that he had.*' Defendant did not testify."

Proof that the defendant operated the motor vehicle is, of course, an essential element of this prosecution. It would seem that the circumstances shown in this case were sufficient to permit the inference that defendant had been operating the car. However, it will be noted that the prosecutor proved by Trooper Herndon that, in response to a question by Trooper Aytes, defendant had stated that he had been driving it. There was no showing that he had been given the *Miranda* warnings. Objection was made and overruled upon that ground and the answer was permitted. It is our view that if the *Miranda* warnings

are required in this type of case such was prejudicial error and a reversal would accordingly follow.

As a matter of review, we note that it is stated in *Miranda* that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. * * * He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Miranda v. Arizona, 384 U.S. 436, 1. c. 444, 479, 86 S.Ct. 1602, 1. c. 1612, 1630, 16 L.Ed.2d 694. Nothing is said in *Miranda* to specifically indicate whether or not it would apply to motor vehicle or other offenses generally described as minor. However, it is significant that all four of the cases encompassed in *Miranda* involved very serious crimes (murder, rape, robbery, and kidnaping), and that the primary purpose of that opinion was to proscribe the practice of lengthy incommunicado police interrogation seeking to "sweat out" confessions.

The question presented is one of first impression in this state. We have, however, read the decisions in a number of other states which, by actual decision or dictum, have discussed this question. Although there are not any large number of cases we think it may be safely said that the current weight of authority is to the effect that the *Miranda* warnings are not required before a driver may be questioned in cases involving motor vehicle offenses. Some of the cases have adopted the rule that the warnings need not be given in any

misdemeanor case. We have concluded that we need not consider so broad a question. Our decision will be restricted to the question as to the necessity of such warnings in only those misdemeanor offenses arising from the operation of a motor vehicle.

■ We have the view and accordingly rule that the *Miranda* warnings need not be given as a prerequisite to testimony as to admissions made to investigative officers by persons involved in motor vehicle offenses, regardless of whether the questions are asked before or after the arrest.[2] There are a number of reasons for our decision. In the first place *Miranda* does not say that the rule shall be applied in cases involving so-called minor offenses, such as those arising from the operation of motor vehicles. As hereinafter discussed, we fail to see any logical reason why the *Miranda* rule should be extended beyond its clear limits, and we decline to do so. And, we may say in passing that a careful reading of *Miranda*, and the conditions and circumstances therein detailed, indicates to us that the court never intended that the rule therein announced be applied to cases such as the one at bar. That belief is fortified by the fact that the court has since denied certiorari (which we readily recognize not to be a conclusive decision) in a case so holding. See State v. Pyle, 19 Ohio St.2d 64, 249 N.E.2d 826, certiorari denied 396 U.S. 1007, 90 S.Ct. 561, 24 L.Ed.2d 498.

The fundamental reason for the *Miranda* rule simply is not present in the investigation of motor vehicle offenses. Nearly all of the interrogation occurs, as in the case at bar, at or near the scene of the violation and not in a coercive atmosphere created by law enforcement officials. And, as stated by the New Jersey court, "Generally, it encompasses only simple standard inquiries for the purpose of a necessary accident or violation police report, even though

some of the information obtained may go beyond the so-called investigatory phase and be inculpatory as to the violation. * * * [T]he violations involved are not serious enough in their consequences to warrant the time consuming interference which would result to effective law enforcement and the expeditious administration of justice in petty offense cases. * * * [A]s a purely practical matter, it would be utterly impossible to provide sufficient lawyers to consult with the number of motor vehicle operators who would be likely to request legal advice." State v. Macuk, 57 N.J. 1, 268 A.2d 1, 9. It is not reasonable or practical to rule that a trooper or other traffic officer investigating a vehicular accident, or in arresting a driver for speeding or driving while intoxicated, or other vehicular offenses, must give the *Miranda* warnings and possibly wait for the driver to obtain an attorney, or for one to be appointed for him, before he can ask him the usual questions involved in such an investigation. And, as indicated, there are probably not enough attorneys readily available to provide pre-interrogation counsel for all of the persons desiring such that are involved in the thousands of vehicular offenses that occur every year in this state. The practical effect of a ruling requiring that the *Miranda* rule be complied with in vehicular cases would be to substantially impair, if not destroy, the effectiveness of our system of investigating traffic accidents and violations.

In addition to the cases heretofore cited, the views heretofore expressed are supported by State v. Bliss (Del.), 238 A.2d 848 [1]; State v. Beasley, 10 N.C.App. 663, 179 S.E.2d 820 [5]; State v. Desjardins, 110 N.H. 511, 272 A.2d 599; State v. Angelo, 251 La. 250, 203 So.2d 710 [1]; People v. Bliss, 53 Misc.2d 472, 278 N.Y.S.2d 732 [6]; City of Columbus v. Hayes, 9 Ohio App.2d 38, 222 N.E.2d 829 [1]; and State v. Zucconi, 93 N.J.Super. 380, 226

2. We do not intend that this decision be interpreted as allowing admission of a coerced or involuntary confession in any case. The question of voluntariness is not

here involved and may be determined by the trial court in the trial of motor vehicle offenses, as well as in any other criminal case.

A.2d 16 [4]. A contrary decision is Commonwealth v. Bonser, 215 Pa.Super. 452, 258 A.2d 675 [8].

As indicated, we rule that the trial court did not err in admitting the evidence in question.

Judgment affirmed.

FINCH, C. J., and DONNELLY, MORGAN and HENLEY, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents and concurs in separate dissenting opinion of SEILER, J.

SEILER, Judge (dissenting).

So far as the Miranda part of this case is concerned, the only question before us is whether the Miranda rule applies to a first prosecution under Sec. 564.440, R.S.Mo. 1969, V.A.M.S. which prohibits driving a motor vehicle while intoxicated, but the court goes much further and lays down the broad dictum that Miranda does not apply to investigation of most motor vehicle offenses. In so doing the court accepts the speculative postulate that otherwise "it would be utterly impossible to provide sufficient lawyers to consult with the number of motor vehicle operators who would be likely to request legal advice."

What evidence there is on the subject is to the contrary. A study was made by a group from Yale Law School as to the workings of the Miranda rule at the New Haven, Connecticut police station for an eleven weeks period during the summer of 1966. New Haven has a population of 152,000 inhabitants. The results are reported in 76 Yale L.J. 1519–1648. One of the findings was that in only a few instances did the warnings as given cause suspects to ask for counsel, even though felonies and serious misdemeanors were involved. "In a primarily statistical analysis, we conclude that there is no evidence indicating that the warnings given this summer caused many suspects to refuse to talk or to ask for counsel", l. c. 1523. "Our findings suggest Miranda will rarely bring lawyers to the station house. Defendants, told of their right to counsel, usually neglect the offer and let interrogation proceed", l. c. 1600.

In the District of Columbia, the Institute of Criminal Law and Procedure of Georgetown University Law Center undertook an empirical study of the attempt to implement Miranda in the District. This is reported in 66 Michigan L.R. 1347–1422. The Junior Bar Association of the District Bar and the Neighborhood Legal Services Project set up a program to provide around-the-clock availability of counsel for defendants, seven days a week, for a period of a year. In this year, "an astonishingly small number of defendants", only 7% of all those arrested for felonies and serious misdemeanors, requested counsel from the Project, l. c. 1352. In "The Self-Inflicted Wound", by Fred P. Graham, a member of the bar and the Supreme Court correspondent for The New York Times, the author sums up the research which has been done on the effect of the Miranda rule in police work and says at p. 280: "The verdict of the academic researchers has been virtually unanimous—that the impact of Miranda has not been great . . . and that in any event most suspects go ahead and talk."

It is a mistake, in my opinion, to decide the question of whether the Miranda rule applies to a drunken driving charge on the erroneous assumption the police would be swamped with requests for counsel if the rule is held to apply to motor vehicle offenses in general, a question which is not before us, anyway.

In addition, the broad denial laid down by the decision will be read by the police as our approval to relax their vigilance in warning suspects of their constitutional rights whenever the police investigate what

at first appears to be only a minor motor vehicle offense. As the investigation proceeds, the police may find a major felony has been committed, whereupon their work may be spoiled for want of a Miranda warning at the outset. This risk is inevitable where the criterion for determining the applicability of Miranda warnings is not, has the person been taken into custody as set forth in Miranda, but whether the police can divine at the time the person is first taken into custody if he is to be prosecuted for only a motor vehicle misdemeanor or something more serious.

I believe we should confine ourselves to the issue before us. On that issue I believe Judge Hogan, in his opinion in the Court of Appeals, convincingly sets forth the reasons why the Miranda rule should apply to a prosecution for drunken driving. I, therefore, dissent and adopt as my dissent the following from his opinion, where, immediately after what is quoted in the majority opinion, Judge Hogan goes on to say:

"The substance and force of the defendant's point is immediately apparent. To make out a case under Sec. 564.440, R.S. Mo. (1969) V.A.M.S., the State must prove 1) that the defendant operated a motor vehicle, and 2) that he was in an intoxicated condition while doing so . . . [F]rom the outset, the State here undertook to establish the first element of the offense, operation, by admission of the defendant. The *Miranda* and *Orozco* cases require the four point warning at the time the individual is taken in custody or otherwise deprived of his freedom of action in any significant way. Miranda v. Arizona, supra, 384 U.S. 436 at 477, 87 S.Ct. 1602 at 1629, 16 L.Ed.2d 694 at 706; Orozco v. Texas, 394 U.S. 324, 327, 89 S.Ct. 1095, 1097, 22 L.Ed.2d 311, 315. The use of admissions obtained from the defendant after arrest and without the *Miranda* warning having been given is, in the language of the Orozco case, '. . . a flat violation of the Self-Incrimination Clause of the Fifth Amendment as construed in Miranda.'

Orozco v. Texas, supra, 394 U.S. at 326, 89 S.Ct. at 1097, 22 L.Ed.2d at 314. Moreover, it is clear from the Federal authorities that although the words of *Miranda* do not constitute a ritualistic formula which must be repeated verbatim, United States v. Vanterpool, 2 Cir., 394 F.2d 697, 698–699, the whole substance of the warning, and not merely part of it, must be given, in the absence of a waiver, which is not even suggested here. Green v. United States, 10 Cir., 411 F.2d 588, 589(2, 3); United States v. Fox, 2 Cir., 403 F.2d 97, 100 (204); Lathers v. United States, 5 Cir., 396 F.2d 524, 533–534(10); see also Anno., 31 A.L.R.3d 565, 574, Sec. 2(a) (1970).

" . . . [T]he unmistakable import of Trooper Aytes' testimony is that the defendant was placed 'under arrest' and significantly deprived of his freedom of action at the time Aytes walked up to the defendant's vehicle and observed the defendant, his intoxicated condition and the condition of the front end of his vehicle. Trooper Aytes advised defendant that anything he might say could be used against him, but his warning went no further. Trooper Herndon arrived *after* defendant was under arrest, and he was permitted to testify that 'if I recall, Trooper Aytes asked Mr. Neal if he had been driving and he said he had.' The State therefore made its case, or a substantial part of it, in our opinion, on custodial admissions obtained without a *Miranda* warning, or at least without a proper warning . . . Our conclusion . . . is, that the defendant was prejudiced by permitting Trooper Herndon to testify to his admission that he had been driving because that admission was made during custodial interrogation without a proper *Miranda* warning

. . .

" . . .

" . . . It may be true that the *Miranda* rule cannot be practicably applied to every petty offense, and it may be that *Miranda* was not meant to apply to misdemeanors, though we certainly find no such

limitation in the language of the case. We are not called upon to decide such broad questions here, but only to decide whether or not *Miranda* is applicable to prosecutions under Sec. 564.441. ·

"The difficulty we have here is that the distinctions drawn in other states are, in our view, inadequate as criteria by which to determine this appeal . . . Perhaps those courts had in mind those offenses commonly regarded as mere infractions of the 'rules of the road', but to exempt litererally *all* offenses involving the operation of a motor vehicle from the application of *Miranda* would equate a speeding ticket with a prosecution for manslaughter by culpable negligence in the operation of a motor vehicle under Sec. 599.070, an equation we regard as untenable . . . Assuming that the privilege against self-incrimination and the right to counsel are divisible so as to apply in some cases and not in others, the consequences of conviction may in sum total be as serious for the misdemeanant as for the felon.

"Our difficulty is compounded by the fact that our Sec. 564.440 is a hybrid statute. It prohibits 'operating' a motor vehicle 'while in an intoxicated condition.' It provides that the first two violations are to be considered misdemeanors, and that the third and subsequent convictions are felonies. For the first offense, as here, the penalty is a fine of not less than $100, or imprisonment in the county jail for not more than six months, or both; for the second offense, the penalty is confinement in the county jail for a term not less than 15 days and not more than one year; for the third and subsequent offenses the penalty upon conviction is either confinement in the county jail for not less than ninety days nor more than one year, or by imprisonment by the department of corrections (that is, in the penitentiary) for a term of not less than two nor more than five years. In addition, under our 'point system', a conviction under Sec. 564.440 results in loss of the misdemeanant's driving privileges pursuant to Secs. 302.302, Subd. (7)

and 302.304, Subd. (3). If the conviction under Sec. 564.440 is a second conviction, the misdemeanant may not be granted even limited driving privileges. Sec. 302.309, Subd. (5). Other disabilities in the nature of disfranchisement are attendant upon third and subsequent convictions. See Sec. 564.710. Moreover, the offense of driving while intoxicated is relatively easy to prove; the individual suspected of the offense is practically obliged by the provisions of Sec. 564.444 to submit to a chemical test to determine whether or not he is intoxicated, and the element of 'operation' may be proved by inference from almost any circumstance indicating that the defendant had been driving or attempting to drive the automobile . . .

" . . . [W]e conclude that the *Miranda* rule should be and is applicable to violations of Sec. 564.440. The charge is relatively simple to prove; ordinarily, no extensively custodial interrogation is necessary. The consequence of conviction may be extremely serious, and we do not believe that law enforcement officers would be heavily overburdened by the application of the *Miranda* procedures to violations of Sec. 564.440."