STATE of Missouri, Plaintiff-Respondent,

v.

Margaret PHILLIPS and Gena Scott,
Defendants-Appellants.

Nos. 34874, 34875.

Missouri Court of Appeals,
St. Louis District,
Division 1.

April 2, 1974.

Louis Gilden, St. Louis, for defendants-appellants.

Gene McNary, Pros. Atty., Karl J. Keffler, Asst. Pros. Atty., Noel L. Robyn, John A. Newton, Clayton, for plaintiff-respondent.

WEIER, Judge.

Defendants Gena Scott and Margaret Phillips were found guilty by a jury of vi-

olating § 560.445, RSMo. 1969 [1] V.A.M.S. in that they trespassed on posted property, and each was sentenced to seven months imprisonment and fined $500.00. They were separately charged for trespassing on property of McDonnell-Douglas Corporation in St. Louis County, Missouri, but at their request the charges were tried at the same time in the circuit court on appeal. It was also at their request that they represented themselves at the trial. A review of the facts will illuminate defendants' contentions.

The entire perimeter of the McDonnell property where the trespass occurred is enclosed by a fence. At each entrance to the property there is a sign stating: "Private Property, No Trespassing" and a security guard is stationed there. Visitors to the McDonnell plant drive through one of the perimeter gates, park their cars on a parking lot, and then must be identified before they can enter the buildings. On admission, they are given an identification badge which they must wear in the plant. All McDonnell employees must likewise wear identification badges while on the property. All of these requirements are in conformity with regulations issued by the company.

On May 24, 1971, security officials at McDonnell were notified of the presence of two unauthorized persons in one of McDonnell's buildings. The two defendants were found in a structure called "Building No. 2", passing out leaflets to McDonnell employees. Building No. 2 contains classified material and is regulated by the United States Defense Department.

Both women were approached by security personnel and asked for identification, but they produced none. They were then asked to accompany the officials to the security office and they refused. Going limp, they were then carried to the office. A subsequent search of their persons revealed no identification or authorization to be present in the McDonnell compound.

When questioned, defendants revealed that they were associated with a political action group, and that they had been let into the security area by "friends". At the trial, they contended that they came to McDonnell to protest certain alleged civil rights violations by that employer, and that certain guards who were members of the political action organization had allowed them to come onto McDonnell property.

Defendants' first contention on appeal is that the statute involved here has two separate and essential elements, both of which are prerequisites for conviction, and that the state only proved one of them. § 560.445 provides:

"Any person or persons who shall willfully enter, or go upon the inclosed premises of another, whereon the owner, or other person in charge of said premises shall have previously posted plainly written signs or warnings thereon, where they may be readily seen, using the words 'no trespassing,' 'keep out' or words of similar meaning, and any person or persons who shall molest, injure, remove or destroy any such sign or warning so posted by the owner or person in charge of said premises shall be deemed guilty of trespass to real estate and upon conviction shall be deemed guilty of a misdemeanor."

The defendants acknowledge that the state has proven that they entered the premises of McDonnell, and that they passed a "No Trespassing" sign in so doing. But they contend that under the statute, before they can be convicted of trespass, they must also be found to have molested, injured, removed or destroyed one of the written signs posted by the owner or person in charge of the premises. The conjunction "and" used here, however, joins what could be two complete sentences independent of each other. Each portion of the statute has a complete subject, verb and predicate. It actually describes two acts which the statute declares to be unlawful. One pro-

---

1. This section was repealed and § 560.447 enacted. Laws 1973, H.B. No. 128.

scribes the willful entry upon the enclosed land of another, and the other portion proscribes certain action with respect to the signs used in posting the land. As in Hurley v. Eidson, 258 S.W.2d 607, 610[3] (Mo. banc 1953), we read the word "and" to mean "or", with the result that the statute defines two separate prohibited acts, the commission of either one being a misdemeanor.

■ Defendants do not entirely rely, however, upon a literal reading of the statute, but also refer us to the common law of trespass which not only requires a malicious entry, but also a resulting damage or injury to the property. We do not dispute this to be the common law, but merely reply that this is not a case wherein the defendants are accused of a violation of the common law crime of "trespass". In one of the cases cited by defendants in support of this theory, City of Cape Girardeau v. Pankey, 224 S.W.2d 588, l.c. 589 (Mo.App. 1949), some language is used in the opinion of the court which would support defendants' contention. There the court stated: "Every section of the statutes of our State dealing with the punishment of acts which constitute trespass requires that the act be willfully or maliciously done, and that it result in injury to the person or property of another." But the court was dealing there with the validity of a city ordinance, and the case itself contained no reference to the statute with which we are now concerned. This conclusionary statement was not necessary to the ruling of the court, and being dicta and inaccurate, we do not consider it binding on us at this time.

■ Defendants next contend that there is not sufficient evidence that their entry was unauthorized and thus in violation of the statute. Specifically, they contend that they were let in by some guards employed by McDonnell.

■ There is no direct evidence going to the question of how the defendants got into the McDonnell compound. The state did show, however, that defendants were found, without authorization, on the McDonnell property which was surrounded by a fence with "No Trespassing" signs posted conspicuously at each entrance. The state also proved that the guards were authorized to let only persons with McDonnell-Douglas identification into the area where defendants were found. From this evidence, both direct and circumstantial, the jury was justified in its conclusion that defendants entered in violation of the statute. Defendants have attempted to rationalize their entry upon the premises by at least implying that there was some arrangement between them and the guards whereby they were admitted to the premises. Even if it be true that the guards let them in, any conspiracy with the guards would not excuse the defendants from a violation of the trespass statute.

■ Defendants also contend that a certain conversation between the judge and a juror was reversible error. This episode occurred on June 14, 1972, when the judge called both parties to his chambers. Mrs. Catanzaro, a member of the jury, was present. Both sides had rested their case by this time. The judge stated that he had informed Mrs. Catanzaro of the passing of an immediate member of the family and that he had permitted her to make a telephone call. She confirmed these facts. The court asked her at that time if she desired to remain on the jury, and she answered in the affirmative. The court asked her if she made this decision of her own free will. She stated that she had and that it was her decision alone to stay on the jury.

In State v. Jones, 363 Mo. 998, 255 S. W.2d 801, 806[9] (1953), the court stated that private communications with a juror are forbidden and invalidate the verdict unless their harmlessness is made to appear. Certainly the facts indicate that the communication here was not the type that could be prejudicial in any way. This difficult situation seems to have been fairly

handled without prejudice to the defendants.

 Contentions that the arrest of defendants chilled their exercise of the right to free speech under the First Amendment and was a violation of their civil rights had no merit. Defendants were not employees at the McDonnell plant. They were advised by the signs at the entrance gate not to trespass upon the property. They entered buildings that were restricted because of defense projects. This is not a proper forum for the expression of their opinion concerning alleged discriminatory practices. Trespassing in restricted areas of a defense plant is not a constitutionally protected activity just because the trespasser is handing out protest leaflets. Constitutional rights may not be given as an excuse for illegal activity. Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).

The judgments are affirmed.

DOWD, C. J., and SIMEONE, J., concur.