STATE of Missouri, Respondent,

v.

Leon PETTIS, Appellant.

No. KCD 27104.

Missouri Court of Appeals, Kansas City District.

March 31, 1975.

Ronald M. Sokol, Public Defender, Fifth Judicial Circuit of Mo., St. Joseph, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

Defendant was convicted by a jury of the armed robbery of Herman's Drug Store in St. Joseph, Missouri, on September 28, 1972. The jury fixed his punishment at twelve years confinement and he appeals therefrom.

About 1:30 P.M. on the day of the robbery, four employees of Herman's Drug Store were seated at tables eating lunch when two men entered. One was tall and one was short. The tall man proceeded to the rear of the drug store while the short man stayed near the soda fountain. The druggist went to the rear with the taller

man who pulled a gun and announced a holdup. Meanwhile the shorter man drew a gun and pointed it at one of the employees at the soda fountain and also announced a holdup. Shortly after these two entered the store, a third man entered and assisted the first two in the holdup. Thereafter, three customers entered the store and as each entered they were taken to the rear of the store and, together with the four employees, were forced to lie on the floor and had their arms and ankles tied together. In the course of the holdup, one of the robbers took $85.00 to $90.00 from one of the customers which was held in a money clip in the shape of a dollar sign. A quantity of drugs was also taken from the store.

Within a few minutes after the robbers had left, the druggist succeeded in untying himself and immediately called the police. An alarm was broadcast over the police radio system stating that three black subjects had held up Herman's Drug Store. Shortly thereafter the police dispatcher received a call from someone at Davis Home and Auto Supply who reported two subjects were running by that store in a direction away from Herman's Drug Store, and they seemed to fit the description of the robbers. A description of the clothing being worn by these two men was also given, and giving a physical description, including long hair, together with the fact they were black.

Two detectives of the St. Joseph Police Department had received the first radio broadcast concerning a robbery at Herman's and later received a second broadcast with the information given by the caller from the Davis Store. Shortly thereafter, these detectives saw two black men running in a direction away from Herman's, one tall and the other short, with clothing which matched the description received in the second radio dispatch. At the time the detectives saw these men no more than four or five minutes had elapsed since the first message was heard concerning the robbery.

The detectives testified the men ran for about a block from the time they first saw them until they reached the Sears parking lot at which time they slowed down. This would place them about ten blocks from Herman's. The detectives approached the two men and announced they were police officers, since they were wearing civilian clothing, and asked them for identification. The two men produced identification showing the short man to be the defendant. The detectives then told them they were under arrest for robbery. At about this time another police car with St. Joseph detectives arrived and a third black man was pointed out to one of these detectives as running in the same area and this detective gave chase. After a forty to fifty yard chase, the man stopped and was seen to throw something over a fence. This object was later found to be a firearm. The detectives patted the first two men down for weapons and finding none conducted no other search of them. All three men were thereupon taken to the St. Joseph Police Department where they were booked and at this time the contents of their pockets were removed and inventoried.

From the pocket of defendant was removed a money clip in the shape of a dollar sign containing approximately $85.00. Defendant was later identified, both before trial and in court, by those in the drug store at the time of the robbery as being the short man who stayed at the soda fountain holding a gun.

Defendant's first complaint of error concerns the claim that the arrest was made without a warrant and probable cause, therefore, the subsequent search of the defendant at the police station was unauthorized, and the money, together with the clip, should not have been received in evidence. Defendant's main contention concerns the lack of probable cause on the part of the detectives to place the defendant under arrest because of an insufficient basis to suspect the defendant as having been connected with the robbery. Defendant cites a number of cases holding items

seized without a search warrant are inadmissible and that an illegal search or arrest cannot be justified by that which is discovered in the subsequent search.

Defendant's pre-trial motion to suppress this evidence was overruled by the trial court after a hearing.

The essential question to be answered is whether or not the police officers had probable cause to arrest the defendant.

In State v. Dodson, 491 S.W.2d 334 (Mo. banc 1973) the court stated "[t]he existence of 'probable cause', justifying an arrest without a warrant, is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved".

█ Here the detectives had a description of the men seen running past the Davis Home and Auto Supply which coincided with the first broadcast as to physical size. The subsequent broadcast expanded on this description by giving a clothing description together with some physical characteristics. Thus, at the time the officers arrested defendant, they had both a general physical description and knowledge of the clothing being worn by the men seen running by the Davis Store. Based on the criteria set forth in *Dodson*, there was ample basis to give the officers probable cause to believe the defendant was one of the robbers and to stop him, place him under arrest, and to take him to the police station. '

█ Having placed the defendant under arrest upon probable cause, the removal of the money in the money clip from defendant at the police station was justified and, therefore, admissible. State v. Darabcsek, 412 S.W.2d 97 (Mo.1967).

█ Defendant next contends he was entitled to a "capital panel" because the punishment for armed robbery in § 560.135

RSMo 1969, V.A.M.S., is death or imprisonment for not less than five years. The State did not ask the death penalty. Defendant concedes, and justly so, that the law is against him on this point. It has been consistently held in this State beginning with State v. Naylor, 328 Mo. 335, 40 S.W.2d 1079 (Mo.1931) that a "capital panel" is required only when the potential sentence is necessarily either death or life imprisonment. As held in State v. Morgan, 453 S.W.2d 932 (Mo.1970), when a "capital panel" is not impaneled, then the death sentence cannot be imposed by either the jury or the court and, therefore, the offense charged is not punishable by death. There was no error in refusing to provide a "capital panel".

██ Defendant next complains of the selection of three additional talesmen after the original panel summoned was exhausted. Defendant complains these three were not summoned in the manner prescribed by statute. It is not necessary to decide whether or not the statutory method was strictly followed since it has been held that the sections detailing the method by which additional jurors are summoned is directory and unless the defendant shows that he has been prejudiced or his interests have been adversely affected by the failure to observe these statutory provisions, he is not entitled to any relief on this ground. State v. Thompson, 472 S.W.2d 351 (Mo. 1971). Here defendant claims prejudice because the extra people summoned were retired people whose names were kept on a list to be summoned in the eventuality which occurred in this trial. He complains this deprived him of a reasonable cross section of the citizens of the county. Defendant does not demonstrate or state how this worked any prejudice to him and no prejudice is discernable. In State v. Hamilton, 340 Mo. 768, 102 S.W.2d 642 (Mo. 1937) a contention was made that the sheriff summoned two additional jurors who were former police officers. The court rejected the contention that they were "convicters" and their selection as jurors preju-

diced the defendant. Here the defendant does not make nearly as strong an argument as in *Hamilton*. Defendant does not make any claim or showing that any class of persons was systematically excluded from jury service and bases his only claim on the lack of a "cross section" of persons in the county. This point is ruled against the defendant.

■ Defendant next requests that the action of the trial court in stating to the jury at the beginning of the trial that Mr. Pettis was the colored gentleman sitting beside Mr. Sokol and was from Kansas City, be considered under the plain error rule. However, defendant, in his argument, does not attempt to explain how and in what manner this resulted in manifest injustice or a miscarriage of justice. In this circumstance it may not be considered under the plain error rule. State v. Maggitt, 517 S.W.2d 105 (Mo. banc 1974).

■ Defendant next complains that he was denied his right to a speedy trial. The robbery occurred in September, 1972, defendant had a preliminary hearing in February, 1973, and his trial was held on November 5, 1973. The record further shows that Mr. Sokol, the public defender representing the defendant, talked with the defendant about a trial date but Mr. Sokol advised the court the defendant had no desire to have a trial set until he expressed such desire on July 6, 1973. The record further shows the trial court was concerned with an early trial and made efforts to have the case set as soon as possible. It further shows that after the case was first set, the defendant filed a motion for continuance in September, 1973. In State v. Morris, 501 S.W.2d 39 (Mo.1973) the court quotes from Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) concerning the factors to be considered in determining whether or not an accused has been denied a speedy trial. In *Morris* the court held a delay of sixteen months from the time the defendant was taken into custody until trial did not of itself show a de-

nial of a speedy trial. The court pointed out in *Barker* the delay was more than sixty months.

In this case the defendant and his counsel were aware of the right they had to request the court to set defendant's case for trial at any time, but until July, 1973, the defendant had no desire to have his case set. There is no showing in this case that defendant was denied a speedy trial, nor that the State in any way denied him this right.

■ Defendant further complains of a statement which the prosecuting attorney made in his opening argument. The statement of which complaint is made was:

"I have thought about this case a lot. I have worked with it for over a year. I have an opportunity at this time to make a recommendation, a statement to you of what I feel would be proper punishment when you return that verdict of guilty."

Defendant urges this statement shows the prosecutor had private opinions and violates the rule that the argument must be limited to facts and evidence and must not intimate special knowledge possessed by the prosecutor of facts not in evidence. It is apparent from the argument the prosecutor did not violate either of these rules. It is well settled the prosecutor may recommend punishment and may even urge severe punishment so long as the defendant may respond. Here the prosecutor was simply advising the jury of his right to make a recommendation to them as to the punishment. This was certainly within the prerogative of the prosecutor and could not be the basis of any error. State v. Eaton, 504 S.W.2d 12 (Mo.1973).

Defendant next urges error in admitting a photograph taken at the police station with the drugs taken in the robbery sitting on a table and further showing the druggist and a police officer next to the table.

■ The record shows the photograph in question was marked "Exhibit 7". The

record further shows the trial court stated, "let the record show that Exhibits 2, 4, 5, 6 and 7 are admitted into evidence by stipulation". The record does not show any objection or protest by the defendant to this statement of the trial court and it must, therefore, be taken that the defendant did stipulate to admission of this photograph in evidence. Having so stipulated, defendant may not now complain of its admission in evidence. State v. Atkins, 494 S.W.2d 317 (Mo.1973).

■ Defendant's next point is the refusal of the trial court to admit in evidence a photograph of one Burks who had been charged in the same robbery as the defendant, and who had been tried in a separate trial and acquitted. Defendant had a picture of Burks and showed it to some of the State's witnesses and brought out the fact the description of Burks, given by the witnesses previously, varied from the photograph taken of Burks at the jail on the day following the robbery. After using the photograph for this purpose, defendant offered it in evidence. The identification of Burks was a wholly collateral question in defendant's trial since the question in this case was the identification of defendant Pettis as being one of the robbers. Defendant was positively identified by almost all of the State's witnesses. The identification of Burks and the introduction of a photograph of him would have added nothing to the identification of Pettis and the question of whether or not Pettis was one of the persons involved in the robbery.

In State v. Miles, 412 S.W.2d 473 (Mo. 1967), it was held not to be error to exclude offers of proof or evidence tending to impeach a witness on an immaterial or collateral matter. Defendant's complaint falls within this rule and is overruled.

■ Defendant's next complaint concerns the statement by the trial court made after the State had rested. The court stated:
■

"Ladies and gentlemen the State has rested its case, and I have been informed by the defendant that they do not desire to put any evidence on. So, that completes the evidence in the case."

This point is ruled by the following statement made in State v. Sechrest, 485 S.W.2d 96, 98 (Mo.1972):

"This court has held in many cases that the rule and statute do not prohibit a reference to the failure of a defendant to offer evidence but only to the failure of the accused to testify."

Here, the court clearly did not refer to the failure of the defendant to testify but simply advised the jury the defendant did not desire to put on any evidence. This statement was made clearly to explain to the jury that the evidence had been completed and there would be no further evidence and the court would proceed to ready the instructions for the final arguments and submission of the case to the jury. Clearly the court's remarks do not violate the prohibition against comment on the failure of the defendant to testify. See also State v. Jenkins, 516 S.W.2d 522 (Mo.App.1974).

■ Defendant's final complaint relates to the refusal of the trial court to give his proffered instruction "A".

This instruction read:

"One of the issues in this case, on which the State has the burden of proof, is whether the defendant was present at the time and place the offense is alleged to have been committed. If all of the evidence or any lack of evidence in this case leaves in your mind a reasonable doubt regarding the defendant's presence at the time and place the offense is alleged to have been committed, then you must find him not guilty."

This instruction is identical, except for a sentence omitted therefrom, with the instruction offered in State v. Robinson, 507

S.W.2d 61 (Mo.App.1974). There, this court held such instruction to be the alibi instruction in the Pattern Criminal Instructions, now MAI–CR 3.20, and that such instruction should not be given unless there was evidence to support an alibi. In this case, the defendant did not offer any evidence and under the ruling in *Robinson* a refusal of this instruction was proper.

Finding no error, the judgment is affirmed.

All concur.